**DAVID M. MICHAEL (CSB #74031)**
**EDWARD M. BURCH (CSB # 255470)**
**Law Offices of David Michael**
**One Sansome Street, Suite 3500**
**San Francisco, CA 94104**
**Telephone: (415) 946-8996**
**Facsimile: (877) 538-6220**
**Email: david@davidmichaellaw.com**

**SCOTT W. GROSS (MI BAR # P43094)**
**P.O. Box 380257**
**Clinton Twp., MI 48038**
**586-416-8000**
**Email: swglaw@sbcglobal.net**

**Attorneys for Defendant**
**WILLIAM RICHARD BAILEY**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  vs.<br><br>WILLIAM RICHARD BAILEY,<br><br>  Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**CASE NO.  13-CR-3046-CAB**

**REPLY IN SUPPORT OF DEFENDANT'S MOTIONS TO COMPEL DISCOVER AND TO FILE FURTHER MOTIONS**

**Date:   26  March 2015**
**Time:   9:30 AM**
**Courtroom 4C**

A. **MASTER FILE SOURCE CODE & SYSTEM DOCUMENTATION**

In the United States' opposition to Dr. Bailey's requests for the remaining disputed discovery items (Doc. 80), it asks: "How can discovery of the Source Code and System Documentation be material to his willfulness defense to prior years if he did not possess them?" See Doc. 80 at 3:17-19 (pg. 3, lines 17-19.) It then states that "Defendant has received the source codes and push codes in the discovery produced." *Id*. at 3:19-20. Later, the United States identifies the source code and system information which Dr. Bailey requested as "CC AM 424", see Government Exhibit 3, red circled "CC AM 424" at upper left of the document, and "Source Code 24", see Affidavit of Revenue Agent John C. Parish (Government Exhibit 4) at ¶ 5.

Regardless of the purpose which "CC AM 424" and "Source Code 24" serve, they are not

the "Source Code" which Dr. Bailey identified and sought in his previous briefs to this Court.

See, e.g., *Reply Memorandum Of Points And Authorities In Support Of Defendant's Second/Supplemental Motion For Discovery*, Section III (D), at p. 12-13 (Doc. 57, filed 8/15/2014), and which included this description:

> The "source code" (or equivalent) is a set of computer instructions in a format which is "human readable" and is contained in a "file" much as a Microsoft Word document is contained in a "file." Properly drafted source code often contains comments about why a particular command or command set is necessary to accomplish the objective sought to be accomplished by the computer that is using that source code (program set). Those comments could be particularly useful in showing the jury why the software was overridden and why the computer produced the false and erroneous records. The source code is used as input into a program called a "compiler" which then converts the "source code" into a format which the computer can read and follow and is called "compiled" code or "object" code.
>
> In addition, Dr. Bailey requests that the govt provide the System Documentation for the programs used to generate IMF and TXMODA transcripts assigned to him for the years 1998-2011. This will enable him to determine whether the source code was, in actual fact, implemented as stated in the IRM and Document 6209.

There is also a good description of source code on the Internet at this link:

http://www.webopedia.com/TERM/S/source_code.html

Revenue Agent Parish also states, in reference to both IMF and TXMODA transcripts for 2004, that each "transcript reflects that a 'SFR' was established for the year 2004, and a module was created." *Parish Affidavit* at ¶¶ 6 &7, (Government Exhibit 4). Likewise, in ¶ 8, he states that "there is nothing in Bailey's motion or attachments indicating that any SFRs were improperly established for any year." Agent Parish addresses what each transcript "reflects." He says nothing about the manner by which such transcripts came into existence.

One of Dr. Bailey's core defenses, from the outset of this case, has been his claim that the IRS used fictional or fictitious entries into the Master File computer system in order to evade or circumvent the safeguards designed to prevent the IRS from determining and computing the tax deficiency for the year 1998.

Because the Government has stated repeatedly that it intends to use the Tax Court proceedings which resulted from the IRS 1998 deficiency determination as evidence of *willfulness*, motive, intent, etc., Dr. Bailey has a right to challenge the validity of the 1998 deficiency determination and the ensuing tax court proceedings as having been obtained by such fictional or fictitious entries into the IRS computer system. By doing so, Dr. Bailey will be using

1   the evidence obtained from the source code to challenge and oppose the very evidence which the

2   government intends to use to prove *willfulness*, etc.

3          In addition, the Ninth Circuit's *Manual of Model Criminal Jury Instructions* defines

4   willfully as follows: "In order to prove that the defendant acted 'willfully,' the government must

5   prove beyond a reasonable doubt that the defendant knew federal tax law *imposed a duty* on

6   [him] [her], and the defendant intentionally and voluntarily violated that duty." (Italics added.)

7          Discovery of the source code will reveal that the Commissioner's computer procedures

8   *do not impose a duty* on non-filers to file income-tax returns or pay income taxes. This evidence

9   will rebut the willfulness component of IRC § 7201. Dr. Bailey could not have known of a *duty*

10  which the Commissioner's own procedures demonstrate did not exist in 1998, nor does it exist

11  today according to the same procedures.

12         Moreover, Dr. Bailey claims that discovery of the Master File computer program

13  (human-readable "Source Code") will provide evidence which demonstrates that the

14  Commissioner's computerized source code procedures support Dr. Bailey's claim that the taxes

15  he is alleged to have evaded in 2004-2011 were not "*imposed* by this title," that is, not imposed

16  by the Internal Revenue Code, Title 26, United States Code, an essential element of IRC § 7201

17  (making criminal the evasion of "any tax *imposed* by this title") (italics added). See *United States*

18  *v. Silkman*, 156 F.3d 833, 835 (8th Cir.1998) ("[W]hether a taxpayer is charged with tax evasion

19  by willfully attempting to defeat the IRS's ascertainment of his tax liability, or by willfully

20  attempting to evade the payment of a tax, the government must prove that the tax was in fact

21  'imposed by this title,' in other words, a tax deficiency"). The evidence to be obtained from

22  discovery of the source code is exculpatory and will support Dr. Bailey's defense to both the tax

23  deficiency and willfulness elements of IRC § 7201.

24         Dr. Bailey does not claim that the United States may not impose taxes on his income.

25  Rather, he claims that discovery of the Commissioner's computer program will provide evidence

26  that the source code is executed consistent with the Commissioner's determination that the

27  income taxes Dr. Bailey is alleged to have evaded were not, *in fact*, "*imposed by this title*." Such

28  evidence is exculpatory and will serve to demonstrate to both the Court and the jury Dr. Bailey's

legal and factual innocence.

It is entirely possible that not all taxes imposed by the internal revenue *laws*, as opposed to taxes imposed by the Internal Revenue *Code*, are included in the *Code*. Congress appears to have provided a "catch-all" recognition of this fact at IRC § 7402 which vests authority in "the district courts of the United States . . . to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue *laws*," (italics added).

Dr. Bailey draws a distinction between taxes imposed by the tax *Code* and those taxes which may be imposed by revenue *laws* but not necessarily imposed by the *Code*. He does not claim to be "tax free," "not subject to the tax laws", or in any other manner exempt from tax obligations to which other Americans are subject.

The information to be obtained from the source code and system documentation is information which consists of **direct foundational evidence** upon which the government bases its allegations in this prosecution.  Without it, Dr. Bailey cannot provide admissible evidence showing that the computer entries are either inadmissible or that they do not have any relevancy to his tax obligations, if any.

For the convenience of the government, Dr. Bailey limits his request for the computer source code to that segment of the Master File computer program which initiated the processing of Push Code 036 and ended when the IRS transcripts reflect the appearance of SFR 150. Said differently, he requests each and every step of the computer program in human-readable format from entry of Push Code 036 to and including the appearance of SFR 150 on both IMF and TXMODA transcripts. In terms of his 2004 transcripts, that would cover the entry of Push Code 036 into the IRS computer system on or about August 20-31, 2005 through appearance of SFR 150 on or about September 19, 2005.

Federal Rule of Evidence 901 (*Authenticating or identifying evidence*) (b)(9) ("*Evidence describing a process or system and showing that it produces an accurate result*") provides that authentication or identification of a process or system requires evidence describing a process or system used to produce a result and showing that the process or system produces an accurate result. The advisory committee notes to Rule 901(b)(9) provide that the rule is designed for

situations in which the accuracy of a result is dependent upon a process or system that produces it. The notes also suggest that the rule is particularly adapted to such "recent developments" as the computer. The federal rule dictates that the inquiry into basic foundational admissibility requires sufficient evidence to authenticate the accuracy of the image and the reliability of the machine producing the image.

It is Dr. Bailey's intention to use the evidence gained from discovery of the source code and system documentation to challenge the basic foundational admissibility of the IRS documents and records used in both the 1998 deficiency and tax court proceedings and in the case now before this Court.

Finally, the government states: "the IRS is not on trial in this case and its state of mind is completely irrelevant to any defense that Defendant may seek to raise." Doc. 80 at 5:22-24.

Dr. Bailey's defense is based solely on facts obtained and to be obtained from the discovery requested. The IRS is not on trial. To the contrary, Dr. Bailey's defense relies largely on the *untainted* procedures which the IRS, through its Commissioner, has set in place to perform its duties. Those procedures are, to a large degree, to be found within the *untainted* source code and system documentation which Dr. Bailey has requested.

Where, as here, powerful exculpatory evidence supporting a defendant's claim of innocence is to be found within the IRS's own materials, Dr. Bailey is mindful that, "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *United States v. Cronic*, 466 U.S. 648, 659 (1984).

It goes without saying that neither party nor this Court wishes to see an ongoing trial run into evidentiary difficulties where, as claimed here, it is determined that exculpatory evidence existed within the source code and system documentation, which would have "subject[ed] the prosecution's case to meaningful adversarial testing".

In summary, discovery of the source code, as defined herein and in previous briefs to this Court, will provide evidence which:

- Challenges the willfulness element of IRC § 7201;

- Challenges the tax deficiency element of IRC § 7201;

- Challenges the evidentiary foundation of IRS records, including the "poisonous fruit" therefrom, such as the 1998 deficiency, tax court proceedings and Ninth Circuit's decision; and

- Will provide facts to demonstrate, both to the Court and the jury, Dr. Bailey's legal and factual innocence of the charges arrayed against him.

There exists no reasonable argument why this information cannot be provided by the government.

**B. REMAINING DISPUTED DISCOVERY ITEMS**

**1. Transcripts and exhibits from the grand jury convened in this court in or around July 2013, of witnesses other than Dr. Bailey who testified in regards to Dr. Bailey**

Dr. Bailey will defer this request until after he has received the remaining discovery items ordered by this Court.

**2. Transcripts and exhibits from the grand jury convened in this court in or around July 2013 of general instructions or advisements not related to any specific witness**

Dr. Bailey will defer this request until after he has received the remaining discovery items ordered by this Court.

**3. All reports of government agents, all recorded communications between Dr. Bailey and Receiver Robert Moser, all communications between government agents and Receiver Moser, and all other documents and/or reports of the government, not filed in the case (excluding attorney work product material) which are in any way related to the "Warehouse Bank" case, U.S v. Anthony L. Hargis, individually and dba Anthony L. Hargis & Co., Case No. SACV 04-00273 DOC (ANx.)(CD Cal.)**

Needed for impeachment of Government witnesses.

**4. Documents in the government's possession showing that the contracting trusts and bailment trusts were identified in commerce by a number issued by the Department of the Treasury/IRS which designated them as having no filing requirements ( in fact the number indicated that they were common law entities)**

The government has offered to assist Dr. Bailey in locating materials which it has produced. If it can show him where this discovery item is located, he will be satisfied. He has been unable to locate it among the materials received.

**5. Documents reflecting, and copies of contracts without regard to any limitation the government may place on the term including defining the "trusts" as only/purely statutory**

The government states: "The United States objects to this request because internal government documents are excluded from discovery under Rule 16(a)(2)." The government fails to note that Rule 16(a)(2) is limited as stated therein:

> *Information Not Subject to Disclosure.* Except as permitted by Rule 16(a)(1)(A)-(D), (F), and (G), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents <u>made by an attorney for the government or other government agent in connection with investigating or prosecuting the case.</u> (Underline added)

The *Notes of Advisory Committee on Rules—1974 Amendment* includes this sentence: "The only proposed change is that the 'reports, memoranda, or other internal government documents <u>made by the attorney for the government</u>' are included to make clear that the <u>work product</u> of the government attorney is protected." (Collecting citations.) But, Dr. Bailey does not seek government attorney work product.

The government also states: "The Ninth Circuit decision affirming the tax court's finding on this issue should be collateral estoppel in this criminal case." This is not legally correct. Dr. Bailey intends to use the discovery items requested herein to challenge the validity of the 1998 proceedings, including his claim that both the tax court and Ninth Circuit decisions were tainted by fabricated evidence and should not, therefore, be considered as "collateral estoppel in this criminal case."

The "fabricated evidence" exception to collateral estoppel allows a party, who can establish that an official lied or fabricated evidence, to relitigate an issue with the falsified evidence removed from the equation or, in cases involving intentional concealment of exculpatory evidence, with the undisclosed evidence added back into the equation. See *Wige v. City of L.A.*, 2013 U.S. App. LEXIS 7562, 8-9 (9th Cir. 2013); see also *Liston v. County of Riverside*, 120 F.3d 965, 973 (9th Cir. 1997).

In response to Item #18, the government stated: "Without the IMF and TXMODA files for tax year 1998 (which contain the source and push codes (see Def. Suppl. Mot. at 2-7, 9), it is impossible for Defendant to conclude that 'false entries' were made in the 'computer code' and

that the 'source code' safeguards were evaded. [Def. Suppl. Mot. at 12.]"

It is true that Dr. Bailey does not have and has not received the IMF (Specific) & TXMODA transcripts for 1998. However, he did receive the IMF (Complete) for 1998 and also has the admission of the IRS in the Tax Court that "a return under I.R.C. section 6020(b) was created for the Petitioner." *Tax Court File*, WB-TAX-CT-FILE-000030 at p. 1, ¶ 1. In addition, Dr. Bailey is aware of the usual manner by which such IRC § 6020(b) returns (SFRs) are "created" by the IRS automated procedures.

The IMF (Complete) transcript contains the entry: "SFR 150 03142005" with accompanying DLN (Document Locator Number) "29210-888-00000-5". See FOIA document provided by the government in early 2014, designated as "*672 file Bailey.pdf*" at Page 2 of 25 (pdf pagination). The Internal Revenue Manual (IRM) identifies this particular DLN at IRM Part 4. *Examining process* (definitions) as follows:

> "For IMF returns, an SFR can be identified by a TC 150 with a DLN of XX-210-XXX-(000-299)-XX-X (paper SFR's) or XX-210-888-000-XX-X for computer generated SFR's using AM424 with Push Code 036."   http://www.irs.gov/irm/part4/irm_04-004-001.html

The quote from IRM Part 4, immediately above, spells out very clearly that the SFR with DLN dated 29210-888-00000-5 is a "computer generated SFR[ ] using AM424 with Push Code 036." Dr. Bailey has briefed this Court and the government on his claim that such "computer generated SFRs" come into existence via fictional and fictitious computer entries into the Master File and other IRS computer systems in order to make the taxpayer's IRS transcripts reflect that an SFR was created by the IRS under authority of IRC § 6020(b), when, in fact, the IRS never actually creates such returns. See, e.g., the Affidavit of Revenue Agent Parish at ¶ 8, where he declares: "there is nothing indicating a Form 1040A (or any other tax return) was filed by or on behalf of Bailey for any tax year."

Yet, the 3rd, 4th and 5th digits of the DLN, above, are "210." *Document 6209* (2015) (the document wherein IRS explains its computer codes), at p. 4-1, explains that the tax class consists of the third digit and the document code consists of the fourth and fifth digits of the DLN. http://www.irs.gov/pub/irs-utl/6209_Section4_2015.pdf

*Document 6209* (2015), at p. 2-5, indicates that tax class "2" with document code "10"

pertains to Form 1040A. http://www.irs.gov/pub/irs-utl/6209_Section2_2015.pdf

In the Tax Court proceedings for 1998, the IRS admitted that "a return under I.R.C. section 6020(b) was created for the Petitioner." *Tax Court File, WB-TAX-CT-FILE-000030* at p. 1, ¶ 1. This SFR "return" is encoded into the DLN for 1998, in the 3rd, 4th & 5th digits as "tax class "2", document code "10" and, as noted, pertains to a Form 1040A. The same is true for the DLN for tax year 2004; it, also, contains "210" in the 3rd through 5th digits, reflecting that a Form 1040A exists.

Agent Parish notes that he has reviewed Dr. Bailey's IMF and TXMODA transcripts for 2004. See *Parish Affidavit* at ¶¶ 6 &7. Yet, he declares that "there is nothing indicating a Form 1040A (or any other tax return) was filed by or on behalf of Bailey for any tax year." *Id*., at ¶ 8.

The IRM states that a return must be posted before "Exam" (short for the IRS Examinations Division) can process a taxpayer's account. IRM 3.12.179.14.1  (01-01-2014) (*General Information*) provides, in relevant part: "**All Doc Code 47 (Exam) and most Doc Code 54 (DP) Adjustment transactions require a return be posted**.") (Bold in original) http://www.irs.gov/irm/part3/irm_03-012-179r-cont01.html  "Exam" is the IRS division which conducts deficiency proceedings.

The IRS admission in Tax Court that "a return under I.R.C. section 6020(b) was created for the Petitioner" must be read in light of Agent Parish's declaration that "there is nothing indicating a Form 1040A (or any other tax return) was filed by or on behalf of Bailey for any tax year." True, the Tax Court admission refers to 1998, whereas Agent Parish refers to 2004. However, the DLNs for both years contain Tax Class "2" and Doc Code "10" indicating that a Form 1040A exists and was posted to that segment of the Master File assigned to Dr. Bailey. Push Code 036 is used to generate such DLNs, as noted above. Document 6209 states that Push Code 036 "[w]ill cause a TC 150 to post to Master File 1 cycle after input." **Section 12 – Examination**, *Push Codes* at p. 12-16 http://www.irs.gov/pub/irs-utl/6209_Section12_2015.pdf

*Document 6209*, **Section 8A - Master File Codes**, at p. 8A-8 (2015)[1], provides two

---

[1] http://www.irs.gov/pub/irs-utl/6209_Section8A_2015.pdf

*Reply In Support Of Defendant's Motions To Compel Discover And To File Further Motions*

explanations of the computer code "TC 150." The first is for an "original return [which] establishes a tax module." Dr. Bailey had not filed an "original return" for tax year 2004 until September 2008. In 2005, the IRS computers generated IMF and TXMODA transcripts reflecting that an SFR had been established on or about September 19, 2005. That SFR was generated by Push Code 036 *one cycle after* it (Push Code 036) had posted TC 150.

"Push Code 036: "Non-Filer: Will computer generate a substitute for return TC150 at Master File 2 cycles after input. — Will cause a TC 150 to post to Master File 1 cycle after input." **Section 12 – Examination**, *Push Codes* at p. 12-16 http://www.irs.gov/pub/irs-utl/6209_Section12_2015.pdf

**The TC 150 *posted* one cycle before the SFR TC150 was *generated* could not have been Dr. Bailey's "original return"; he hadn't filed any return for 2004 during the 2005 timeframe when the SFR was generated on or about September 19, 2005.** The DLN associated with the 2004 SFR appears in the format "XX-210-888-000-XX-X for computer generated SFR's using AM424 with Push Code 036." http://www.irs.gov/irm/part4/irm_04-004-001.html

It appears, then, that the TC 150 posted by Push Code 036 one cycle before the 2004 SFR TC150 may have also been "computer generated." It turns out that there is a second explanation for TC 150 on page 8A-8 of *Document 6209* and sets forth three helpful explanations:

- Entity Created by TC 150
- Generated Transaction
- This TC 150 when posted to the Entity Transaction Section indicates the Master File Entity was created from the posting of the return.

From this, it is apparent that the tax module was opened or "the Master File Entity was created from the posting of the return." What "return" was "posted"? Not Dr. Bailey's "original return." No such return had been filed by him at that point in time. The IRS informed the Tax Court that "a return under I.R.C. section 6020(b) was created for the Petitioner." We also know that Dr. Bailey had not filed an "original return" for tax year 1998.

If this Court is to accept that the IRC § 6020(b) for 1998 was, in actual fact, "created" by the IRS and was used to open a tax module for that year, how is that possible, when *Document*

1   *6209* clearly states that the SFR TC150 comes into existence one cycle *after* TC 150 has posted?
2   Furthermore, Document 6209 clearly states that the "computer generated" TC 150 created the
3   Master File Entity.

4          One IRS agent declares under penalties of perjury that Dr. Bailey's 2004 transcripts show
5   no evidence that the IRS created a Form 1040A or any other return for Dr. Bailey. Yet, assuming
6   the 1998 IMF & TXMODA are substantively similar to the same 2004 transcripts, the Court is
7   asked to accept the admission by an IRS attorney that the IRS did, in fact, create a "return" for
8   Dr. Bailey for tax year 1998.

9          Finally, the DLNs for both 1998 & 2004 reflect that a Form 1040A exists. If it exists,
10  perhaps the Court should order the prosecution to produce it as part of Dr. Bailey's discovery. He
11  has not asked for it previously, as he deemed it more appropriate to await receipt of the 1998
12  IMF and TXMODA transcripts in order to identify it more accurately for both the Court and the
13  government.

14         Dr. Bailey claims that full discovery of the items requested herein and such other
15  discovery as may be needed and justified by these items will demonstrate that IRS never actually
16  creates a return, SFR or otherwise, under IRC § 6020(b) for non-filers. Instead, it "games" the
17  computer by fictional and fictitious entries into its computer databases in order to produce
18  transcripts which "reflect" that an SFR was created under IRC § 6020(b).

19         This "fabricated evidence" makes possible the computer processes required to allow
20  Exam to make changes to the nonexistent SFR return, compels the non-filer to either accept the
21  deficiency or petition tax court to review the deficiency and, in most cases, suffer the imposition
22  of a tax assessment despite the fact that the untainted IRS computer procedures would not permit
23  either the deficiency or assessment proceedings to take place.   One of the basic tenants of Dr.
24  Bailey's defense, and what he intends to show at trial, is that both the tax court and the Ninth
25  Circuit decisions came about as a result of "fabricated evidence" and, therefore, come within the
26  "fabricated evidence" exception to collateral estoppel and issue preclusion.

27  //
28  //

1
2

**6. Memorialization of agents' interviews with Dr. Dunnum reflecting that he supplied contract information and admonished agents in conversation and in writing not to conflate Dr. Bailey with the contracting trust.**

3
4

Dr. Bailey is satisfied with the government's response and promised action on this request.

5

**7. IRC § 6020(b) Assessment Case File (Tax Years 1998-present)**

6
7
8
9
10

Dr. Bailey narrows this request to the year 1998. The government does not state why it has not provided this item to the defense. This item will provide evidence of the fictitious nature of the 1998 deficiency and the improper use of the Master File computer system to obtain that deficiency. It will support his defense against the willfulness and tax deficiency elements of IRC § 7201.

11

**8. Individual Master File (IMF-Specific) for 1998**

12
13

Dr. Bailey is satisfied with the government's response and promised action on this request.

14

**9. TXMODA (Tax Module A) for 1998**

15
16

Dr. Bailey is satisfied with the government's response and promised action on this request.

17

**10. Every Deficiency Made Pertaining to Defendant**

18
19
20

The government stated: "Defendant's contention that the process used to compute the tax 'illegally circumvented the Commissioner's safeguards and were not authorized' is a meritless, conclusory argument, which he has failed to support with any evidence." *Doc. 80* at 12:25-28.

21
22
23
24
25
26

Dr. Bailey limits this request to the deficiency for 1998. This item will be used to challenge the validity of the 1998 deficiency and tax court proceedings, in that the deficiency was based upon a fictitious SFR referred to by the IRS's admission that "a return under I.R.C. section 6020(b) was created for the Petitioner." *Tax Court File*, WB-TAX-CT-FILE-000030 at p. 1, ¶ 1. This item forms an important piece of evidence to be used by the defense against the willfulness element of IRC § 7201 which is inextricably intertwined with those proceedings.

27

**11. Form 13496 for Tax Years 1998-present**

28

In response to this request, the government states: "the United States can provide

Defendant another copy or assist Defendant in obtaining copies of Form 13496 for tax year 1998." Dr. Bailey will be satisfied if the government provides a copy of this request for 1998.

**12. All Training Materials re: Items of Income "Excluded by Law"**

In response to this request, the government stated: "The items of income 'excluded by law' are defined in 26 U.S.C. §§ 101-140 ('Items Specifically Excluded from Gross Income')."

Dr. Bailey will be satisfied if the government will stipulate that IRC §§ 101-140 contain a complete list of items of income "excluded by law" as stated in both 26 CFR §§ 1.61-1(a) and 1.61-2(a). If not, he repeats his earlier request as to this item.

**13. A List of All Items of Income "Excluded by Law"**

The government repeats its response to item #12; the defense repeats its reply to item #12.

**14. All Training Materials re: Non-Taxable Items under Constitution**

The government states, as to this request: "The United States Constitution does not contain a list of non-taxable income. As stated above, that information is contained in 26 U.S.C. §§ 101-140."

Treas. Reg. § 1.312-6(b) refers to items of "income not taxable by the Federal Government under the Constitution."

Dr. Bailey will be satisfied if the government will stipulate that IRC §§ 101-140 contain a complete list of all such items of income "not taxable by the Federal Government under the Constitution." If not, he repeats his earlier request as to this item.

**15. A list of All Items of Income Not Taxable under the Constitution**

The government repeats its response to item #14; the defense repeats its reply to item #14.

**16. Copies of "IRC § 6020(b) Revenue Officer Training" Materials**

As to this item, the government stated: "Defendant has failed to articulate how this information is material to his defense." Dr. Bailey explained his proposed use of this material in his brief titled *Materiality of Remaining Discovery Items* at pp. 11:21-12:11. (Doc. 77.)

//

**17. Records in Any and Every Format" Pertaining to Revenue Officer Training Course**

(Same as Item #16)

**18. Revenue Officer Training Manual, Lesson 23**

(Same as Item #16)

The government also stated that the Internet links Dr. Bailey provided did not work. Doc. 80 at p. 15, fn.2. Here are fresh links retrieved and operational on March 19, 2015: *Revenue Officer Training Manual*, Lesson 23 Re: IRC Section 6020(b) http://www.synapticsparks.info/evidence/c10/misc/Lesson23-3.pdf (referencing IRC § 6020(b) returns). See *Affidavit of John Turner*, former IRS Revenue Officer at http://bit.ly/1KxUb35 (long-form link: http://famguardian.org/taxfreedom/Forms/Discovery/Deposition/Evidence/Q13.000.pdf) ; *Training Course*, *Table of Contents* at http://bit.ly/1KxUqeC (long-form link: http://www.synapticsparks.info/evidence/c10/index.html)

The government further states: "The United States also objects to the production of documents that Defendant already possesses. It appears from his supplemental brief (see 11-12) that Defendant already possesses 'Lesson 23' as he cites to several website links where it can be obtained."

It is true that Dr. Bailey has seen items 16-18 on the Internet, including the Affidavit of John Turner who claims to have been an IRS Revenue Officer, who also claims that he obtained these materials from the IRS during the course he alleges that he attended while with the IRS, and who states that he preserved them.

But, it is, of course, one thing to put before a jury materials gleaned from the Internet and quite another thing to be able to place the same items before the jury when those items have been provided to the defense by the IRS itself and to be able to inform the jury that the IRS had this material in its possession long prior to the 1998 proceedings in this matter. Therefore, copying them from the Internet will not provide to the jury the most crucial, impeaching and exculpatory element of this course, namely, that the IRS composed the course and taught it to its revenue officers at least 27 years ago, perhaps even longer, and yet, as the defense will allege, knowingly

1  violated the "constitutional issues" therein in Dr. Bailey's case.

2          These items will impeach the admission by IRS Counsel Salel before the Tax Court that

3  the IRS "[a]dmits that a return under I.R.C. section 6020(b) was created for the Petitioner." *Tax*

4  *Court File*, *WB-TAX-CT-FILE-000030* at p. 1, ¶ 1.

5          If, as Dr. Bailey believes and Mr. Turner's Affidavit appears to bear out, the IRS had

6  actually taught its revenue officers that IRC § 6020(b) returns were restricted to "employment,

7  excise, and partnership tax returns because of constitutional issues," and yet still claims that it

8  created an IRC § 6020(b) tax return for Dr. Bailey for tax year 1998, this discovery will support

9  his defense that the IRS knowingly entered improper, even fictitious, computer codes into his tax

10  records in order to obtain a deficiency which the untainted IRS procedures would not allow. In

11  addition, it will demonstrate to the jury that the IRS made misleading statements to the tax court

12  concerning the validity of the 1998 deficiency proceedings and will allow Dr. Bailey to

13  challenge the tax court and Ninth Circuit's decisions as having been obtained by false

14  representations made to both courts.

15          The discovery of these course materials will provide powerful, exculpatory evidence that

16  at least some forces within the IRS have been aware for at least 27 years (John Turner states in

17  his Affidavit that he took this course in late 1987) that the preparation of tax returns by the IRS

18  under the authority of IRC § 6020(b) was limited to employment, excise and partnership returns

19  because of "constitutional issues."

20          Despite such awareness, unknown forces within the IRS appear to have engineered

21  computerized procedures based upon entry of fictitious computer codes designed to expand the

22  reach of IRC § 6020(b).  IRS records are made to reflect that, under authority of IRC § 6020(b),

23  IRS created a return (SFR) for a non-filer.  Discovery of the items requested herein will

24  demonstrate that IRS does not, *in actual fact*, create such returns (SFRs) for non-filers. Instead,

25  IRS falsifies records by "gaming" the computers, i.e., by the improper and misleading

26  application of legitimate computer procedures to false and illegitimate ends. End result:

27  "doctored" records designed to deceive the non-filer, the legal profession, the courts and the

28  public!

If discovery of these course materials confirms the substance represented by former Revenue Officer Turner, Dr. Bailey will seek discovery of the nature of the "constitutional issues" which restricted IRC § 6020(b) returns to employment, excise, and partnership returns.

While the IRS may not be on trial, Dr. Bailey has the constitutional right to confront the witnesses arrayed against him, including using the course materials to impeach the false claim that IRS prepared IRC § 6020(b) SFR returns on his behalf.

The Confrontation Clause "commands" that the reliability of testimonial evidence "be assessed in a particular manner: by testing in the crucible of cross-examination." *Crawford v. Washington*, 541 U.S. 36, 61 (2004). In other words, the Confrontation Clause "reflects a judgment * * * about how reliability can be best determined." *Id*.

Dr. Bailey intends to use these course materials in the crucible of cross-examination of the government witnesses on the use of IRC § 6020(b) returns for 1998 and 2004. He also intends to use them to challenge the tax deficiencies determined and computed by Special Agent Morgan for tax years 2004-2011. They will be used to defend against both the willfulness and tax deficiency elements of IRC § 7201.

Lastly, the government stated, as to this item: "The United States requests reciprocal discovery of this material as it is in Defendant's possession and he intends to use it at trial."

Dr. Bailey has not completely formulated his defense strategy and is not, therefore, in a position to state what items subject to discovery he will use at trial. When he has completed his defense plans, he will supply the government with all materials subject to reciprocal discovery.

### 19. Criteria Used by IRS to Ensure Compliance with *Murray's Lessee*

As to this item, the government states: "Defendant has failed to articulate how this information is material to his defense."

The government has stated elsewhere that "[t]he procedures for tax assessment and collection assigned by the First Congress to the Treasury Department were not invented by that Congress. Rather, they were adopted from the familiar procedures of English law and the laws of the States under the Articles of Confederation. See *Murray's Lessee v. Hoboken Land & Improv. Co*., 59 U.S. 272, 277-280 (1856) (tracing tax procedure from the English Court of the

Exchequer, to the States under the Articles of Confederation, and to the Federal Government in the early years of this Republic). See also *Bull v. United States*, 295 U.S. 247, 259 (1935) (summary tax collection procedures date to '[t]ime out of mind')." *Kuretski v. C.I.R.*, No. 13-1090 (D.C. Cir. Sept. 26, 2013), *Brief of United States* at 42-43 http://bit.ly/1gwXs5d; See also *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 360 (1977) (Government affirmed that IRS procedures are "based upon *Murray's Lessee*.")

The procedures executed on the Master File and by means of the source code implemented on the IRS computer systems are subject to this same standard, as affirmed by the government to the Supreme Court *in G.M. Leasing*, *supra*, 429 U.S. at 360.

Dr. Bailey possesses partial, but not complete, evidence to support his defense that the untainted IRS procedures strictly comply with the standard stated in the government's *Kuretski* brief. He also possesses partial, but not complete, evidence to support his claim that unknown forces within the IRS have contrived ways and means to taint the Commissioner's procedures by fictitious entries and other schemes designed to trick or "game" the computer systems and thereby evade and circumvent the safeguards built into the source code or computer systems. These safeguards are meant to ensure that the procedures executed by the IRS computer systems comply with the standard set forth in *Murray's Lessee* and enunciated by the government itself in its *Kuretski* brief.

If, as Dr. Bailey claims, discovery will provide sufficient evidentiary proof that the *untainted* procedures *comply* with *Murray's Lessee* and the *tainted* procedures *violate Murray's Lessee*, then he will have amassed sufficient evidence to seek to suppress all IRS evidence obtained or generated in violation of due process in the execution of its revenue procedures.

**20. Individual Overseeing Procedures re: *Murray's Lessee***

(Same as Item #19)

**21. Individual Overseeing Computers re: *Murray's Lessee***

(Same as Item #19)

**22. Any and All Delegation Orders re: Form 1040 and IRC § 6020(b)**

The government neither confirms nor denies that it possesses any Delegation Orders

1  which authorize any IRS employee to prepare a Form 1040 or any variant thereof under the
2  authority of IRC § 6020(b) on behalf of individuals who do not file income-tax returns.
3      If it possesses such Delegation Order, Dr. Bailey asks that this Court order the
4  government to produce it. If not, Dr. Bailey will be satisfied to have the government deny that
5  such Delegation Order exists.

**CONCLUSION**

7      For the foregoing reasons, Dr. Bailey respectfully requests that the Court order the
8  government to produce the Defendant's remaining discovery requests as outlined herein.

Respectfully submitted,

Dated:  19 March 2015

_s/David M. Michael_
DAVID M. MICHAEL

Attorney for Defendant
WILLIAM RICHARD BAILEY

**CERTIFICATE OF ELECTRONIC SERVICE**

I hereby certify that, on 19 March 2015, I electronically filed the foregoing with the Clerk
of the Court for the Southern District of California by using the CM/ECF system. I certify that all
participants in the case are, or have applied to be, registered CM/ECF users and that service will
be accomplished by the CM/ECF system.

_s/David M. Michael_
DAVID M. MICHAEL

Attorney for Defendant
WILLIAM RICHARD BAILEY