1  LAURA E. DUFFY
2  United States Attorney
   JOSEPH J.M. ORABONA
3  Assistant U.S. Attorney
   California State Bar No. 223317
4  Office of the U.S. Attorney
5  880 Front Street, Room 6293
   San Diego, CA 92101
6  Tel: (619) 546-7951
7  Email:  joseph.orabona@usdoj.gov

8
   Attorneys for the United States
9
                    UNITED STATES DISTRICT COURT
10
                  SOUTHERN DISTRICT OF CALIFORNIA
11

12  UNITED STATES OF AMERICA,        | Criminal Case No. 13CR3046-CAB
13                                   |
                    Plaintiff,       | **UNITED STATES' RESPONSE IN**
14                                   | **OPPOSITION TO DEFENDANT'S**
              v.                     | **MOTION TO:**
15                                   |
16  WILLIAM RICHARD BAILEY,          |    **(1)    DISMISS THE INDICTMENT**
17                                   |
                    Defendant.       | **TOGETHER WITH A STATEMENT OF**
18                                   | **FACTS AND MEMORANDUM OF POINTS**
19                                   | **AND AUTHORITIES**
20

21       The plaintiff, UNITED STATES OF AMERICA, by and through its counsel,

22  Laura E. Duffy, United States Attorney, and Joseph J.M. Orabona, Assistant United

23  States Attorney, hereby files its Response in Opposition to defendant WILLIAM

24  RICHARD BAILEY's ("Defendant") above-referenced motion.  This Response in

25  Opposition is based upon the files and records of the case, together with the previously

26  filed Declaration of IRS Revenue Agent John Parrish (Gov. Ex. 4 (docket no. 80)),

27  Government Exhibits 1 through 20 in support of this Response in Opposition, as well as

28  the attached statement of facts and memorandum of points and authorities.

# I

## SUMMARY OF ARGUMENT

The Government did not fabricate or falsify any evidence in this case.  Defendant is charged with 8 counts of tax evasion associated with tax years 2004 through 2011. Defendant has moved to dismiss the indictment with these charges.  But rather than focus the Court's attention on the charges in the indictment and attack the tax years charged therein, Defendant has made a collateral attack on tax year 1998, even though he was afforded due process in Tax Court and the Ninth Circuit.  In a conclusory manner, without any evidence or affidavits, Defendant has moved to dismiss the indictment by alleging that the codes in his tax transcripts show that the IRS manipulated and fabricated evidence to hide a tax return.  Defendant twists the coded language in the tax transcripts for tax year 1998 to support his argument that the IRS engaged in some sort of alleged "outrageous conduct."  But his arguments are frivolous because Defendant still would have received a tax deficiency notice that resulted in his Tax Court proceedings.

Defendant's unintelligible arguments are based purely on speculation, unsupported assumptions, and Defendant's misunderstanding and misreading of his own tax transcripts. What is "encoded into undecipherable" language are the numerous arguments made by Defendant in his motion to dismiss, where he claims the IRS engaged in an alleged "false-return scheme" in 2005 through 2007. The IRS engaged in no such scheme.  It was Defendant who filed false tax returns in 2008 through 2012 to further his tax evasion.  Defendant's "hodgepodge of unsupported assertions, irrelevant platitudes, and legalistic gibberish" have nothing to do with the tax years charged in the indictment. In fact, Defendant admits that his motion "is not relevant to any of the three elements of [tax evasion]." *See* Def. Mot. at 4 (docket 93).  Defendant simply wants this Court to entertain arguments similar to ones he raised before the Tax Court, and, other arguments he could have raised in those proceedings.  But, this is simply the wrong forum for his collateral attack.  Since Defendant's motion to dismiss "is not relevant" to the charges in the indictment, the Court should deny the motion without an evidentiary hearing.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II

## STATEMENT OF FACTS RELEVANT TO THE MOTION

### A.    The Substitute for Return and 26 U.S.C. § 6020(b)

There is no dispute that Defendant did not file a tax return for tax year 1998. When a person fails to file tax returns, the IRS may properly prepare a substitute for return ("SFR").  *See* 26 U.S.C. § 6020(b)(1).  However, the IRS is not obligated to enter an SFR in the taxpayer's master file in order to prepare a return under § 6020(b), which will result in a statutory notice of deficiency and may result in Tax Court proceedings. *See Wheeler v. Comm'r*, 446 Fed. Appx. 951 (10th Cir. Nov. 1, 2011) (unpublished).[1]

### B.    Defendant's Medical Practice and Use of a Sham Trust in 1998

During tax year 1998, Defendant was an osteopathic physician, which is an occupation that required "quite a bit of education," including postgraduate and medical school. *See* Gov. Ex. 16 at 63 (docket no. 95).  The IRS identified Defendant as a participant in the warehouse banking scheme[2] of Anthony L. Hargis (whose initials are "ALH")[3] and as having received funds for services that Defendant rendered as an osteopathic physician for tax year 1998.  *See* Gov. R&O at 3-9 (docket no. 46); Gov. Ex. 1 (docket no. 95); Gov. Ex. 16 at 19, 21-22, 28-29 (docket no. 95).  As part of its civil examination, the IRS determined that Defendant provided medical services to patients of at least two medical groups and directed these groups to make checks payable to "ALH." *See* Gov. Ex. 16 at 19, 21-22, 28-29 (docket no. 95).[4]   The medical groups paid

---

[1]    The IRS is required to enter an SFR in the master file in order to seek an additional penalty under 26 U.S.C. § 6651(a)(1) for the taxpayer's failure to file a tax return. *See Wheeler v. Comm'r*, 446 Fed. Appx. 951 (10th Cir. Nov. 1, 2011) (unpublished) (noting that the SFR references in the master file may not necessarily be the same as the § 6020(b) return relied on by the Commissioner for the imposition of additions to tax).

[2]    A "warehouse banking scheme" is a scheme where an account is opened at a regular commercial bank in which all taxpayers' income are commingled or pooled, for the purpose of concealing the taxpayer's ownership of the funds from the IRS.  This income is then redistributed back to the taxpayer and used to pay personal expenses.  In this tax avoidance scheme, the taxpayer disavows that the funds transferred to the warehouse bank is income to the taxpayer.

[3]    On March 9, 2004, a complaint was filed in the Central District of California, United States v. Anthony L. Hargis, Case No. 04CV0273.  William R. Bailey was not a party in this case.

[4]    "Gov. Ex. __ (docket no. 94)" refers to the Government Exhibits submitted in support of this Response in Opposition.  The docket reference will refer to the exhibit submitted with that pleading.  Therefore, when the United States

Defendant for his services by writing checks to an entity named "ALH ("Alternative Life and Health"), U.B.O. (an "unincorporated business organization"). [5] *See id.* The medical groups believed that Defendant was employed by "ALH." *See id.* ALH, in turn, deposited checks, coded with a number assigned to Defendant, into a bank account under the name of a purported trust, named "Health Net U.B.O." ("Health Net"), for which Defendant claimed he was the "trustee." *See* Gov. Ex. 1, 16 (docket no. 95). [6]

## C. IRS Civil Examination for Defendant's Tax Year 1998

In February 2005, the IRS conducted a civil exam to determine Defendant's taxable income because he did not file a tax return for 1998. *See* Gov. Ex. 4 (docket no. 95); Gov. Ex. 16 at 62 (docket no. 95). On February 23, 2005, according to the tax transcripts that contain the tax data from the IRS master file associated with Defendant, a master file was opened by the creation of an SFR because Defendant failed to file a tax return for tax year 1998. *See* Gov. Ex. 4 (docket no. 95); *see also* Gov. Ex. 6 at 2-3 (containing the SFR dated February 23, 2005) (docket no. 95). [7] On February 23, 2005, the Examination Division of the IRS sent a request to create an SFR. *See* Gov. Ex. 4 (docket no. 95). The request was approved on March 3, 2005. *See id.* On March 14, 2005, a tax module was opened in order for the IRS to examine tax year 1998 and prepare a return for Defendant under 26 U.S.C. § 6020(b). [8] *See id.* During its civil audit, the IRS

---

references a "Gov. Ex. __," it will include the docket reference in order to provide the Court and parties with direct reference to the exhibit.

[5]    The phrase "UBO" stands for "Unincorporated Business Trust Organization." As discussed, *infra*, Defendant created his own "UBO" called "ALH" in 2004, which is subject of the charges in the indictment.

[6]    Although the word "trust" is used to refer to Health Net, the Tax Court in Defendant's case found that Health Net was not a trust for federal income tax purposes. The word "trust" is used for convenience.

[7]    Had Defendant complied with the law and filed a tax return for 1998, the TC 150 code without an SFR reference would have appeared on his tax transcripts. *See* Gov. Ex. 4 (docket no. __). However, Defendant did not file a return. Therefore, there is only *one* TC 150 code entered on his tax transcript and it is properly designated with the "SFR" reference.

[8]    Defendant claims that this coded entry is a substitute for return. This coded entry is to open a tax module for the Examination Division to investigate and prepare a substitute for return. *See* Gov. Ex. 4 (docket no. __) (Declaration of Revenue Agent John Parrish). Defendant's misunderstanding of this coded entry is the genesis of his entire flawed argument in his motion to dismiss. His attempt to twist this coded entry into something that it is not (*i.e.,* the filing of a Form 1040A) further illustrates the nonsensical nature of his entire motion to dismiss.

received a letter from Defendant on March 20, 2006, where he accused the IRS of acting outside of its authority in examining the "trust" and he demanded that the IRS "CEASE AND DESIST any further mischief, misconduct, and trespass in regards to" ALH and Health Net, their agents and trustees. *See* Gov. Ex. 5 (docket no. 95).  In June 2006, the IRS completed its qualifying § 6020(b) return for Defendant, which contained a tax deficiency and civil penalties for tax year 1998. *See* Gov. Ex. 6 (docket no. 95).  The IRS sent the qualifying return to Defendant in July 2006.  *See* Gov. Ex. 7 (docket no. 95).  In August 2006, Defendant responded to his receipt of the qualifying return and claimed, among other nonsensical and frivolous things, that the IRS lacked the authority to "determine the correct federal tax liability." *See id.*

The IRS completed the § 6020(b) return for Defendant's tax year 1998, which contained three sets of documents: (1) Form 4549-A ("Income Tax Discrepancy Adjustments"); (2) Form 886-A ("Explanation of Items"); and (3) Form 13496 ("IRC Section 6020(b) Certification").  *See* Gov. Ex. 6 (docket no. 95).  The certification is subscribed and expressly states that it and the attached documents shall be treated as the return of the taxpayer under §§ 6020(b) and 6651(g).   Upon the completion of the § 6020(b) return for Defendant, the IRS complied with 26 U.S.C. § 6212 and sent Defendant a statutory notice of deficiency in November 2006. *See* Def. Ex. A (docket no. 93).  Pursuant to 26 U.S.C. § 6213, Defendant had an opportunity to "file a petition with the Tax Court for a redetermination of the deficiency" within 90 days after the mailing of the notice of deficiency. *See* 26 U.S.C. § 6213.

### D.    The Tax Court Proceedings

Defendant initiated Tax Court proceedings by filing a petition with the Tax Court on February 20, 2007.  *See* Gov. Ex. 8.  On July 11, 2007, IRS Counsel sent Defendant a proposed stipulation of facts, along with information (*i.e.,* "The Truth About Frivolous Tax Arguments," Rev. Rul. 2006-19, Rev. Rul. 2006-21, Rev. Rul. 2007-22) to demonstrate that Defendant could not escape taxation by attributing his income to a "trust." *See* Gov. Ex. 9 (docket no. 95).  Despite being warned about making frivolous tax

arguments, Defendant sent a letter to the IRS on August 14, 2007 requesting that the IRS provide him with "statutory delegation authority" to apply § 6020(b) and to file an SFR. *See* Gov. Ex. 10 (docket no. 95).  On September 10, 2007, Defendant filed interrogatories requesting the same delegation authority concerning § 6020(b) and the SFR.  *See* Gov. Ex. 11 (docket no. 95). On September 11, 2007, Defendant filed his response to the IRS's request for stipulations. *See* Gov. Ex. 12 (docket no. 95).  In his response, Defendant asserted he had no duty to pay income taxes and that the IRS "used its faulty and false record system to coerce the [Defendant] before [the Tax Court]." *See id.*  Moreover, Defendant claimed the IRS was relying on "falsified records." *See id.*  Defendant also stated that he was "not A.L.H." and that he had a contract with HealthNet UBO, which was "a pure common law trust." *See id.*

On September 12, 2007, Defendant filed a motion to compel stipulation, where he claimed that the IRS "used a Substitute for Return, 26 USC 6020(b) to create a working computer file on" Defendant's tax transcript.  *See* Gov. Ex. 13 at 4 (docket no. 95). Defendant claimed the IRS cannot "demonstrate any tax liability for William R. Bailey in 1998 and has no lawful basis for considering [Defendant] a 'taxpayer.'" *See id.* at 6. Defendant argued that the IRS used "transaction code 150 on the computer record" in order to "use the color of law in an unlawful attempt to place William R. Bailey under the jurisdiction of a geographical area, namely the Virgin Islands, with an Internal Revenue District." *See id.* at 9.

On September 17, 2007, Defendant filed a series of motions to dismiss, including motions to dismiss based on estoppel, for failure to join an indispensable party, for lack of subject matter jurisdiction, for lack of quasi in rem jurisdiction, and for sanctions. *See* Gov. Ex. 8 (docket no. 95).  On September 20, 2007, these motions were denied. *Id.*

On September 24, 2007, the Tax Court rejected Defendant's responses to the IRS's proposed stipulations (Gov. Ex. 12), noting that he set out "frivolous and groundless assertions and arguments that have no merit." *See* Gov. Ex. 14 (docket no. 95).

/ /

1    On October 15, 2007, Defendant filed a pretrial memorandum alleging errors in the

2    IRS computer systems, including an alleged flaw in the entry for the SFR and claiming

3    the "decoding" showed the IRS activated a "module in the jurisdiction of the Virgin

4    Islands (Opening Transaction Code 150)." *See* Gov. Ex. 15 at 3, 5 (docket no. 95).

5    On October 31, 2007, the Tax Court held a trial, where Defendant represented

6    himself *pro se*. *See* Gov. Ex. 16 (Tax Trial Transcript) (docket no. 95). During the trial,

7    Defendant attempted to advance his frivolous tax arguments, but the Tax Court rejected

8    them. *See* Gov. Ex. 16 at 9, 10, 33, 56-68 (docket no. 94). For example, Defendant

9    claimed he was not a taxpayer (*id.* at 33, 62-64), which the Tax Court found was

10   "frivolous," adding that he was a taxpayer subject to the Internal Revenue Code (*id.*at

11   33). Defendant argued that he was not taxable on the income paid to Health Net, which

12   he was a trustee, because it was a valid "trust" that "did not exist by right of statute." *See*

13   *id.* at 54, 56-57, 61. Defendant admitted that during 1998 his living necessities were paid

14   through an alleged "support agreement" with Health Net, including "a per diem" of "a

15   hundred dollars face value of gold and silver coin," where Defendant "pledged [his] best

16   effort and the trust pledged certain types of support." *See id.* at 56, 59-61. The Tax Court

17   rejected these arguments as "erroneous and frivolous." *See id.* at 58-60.

18   In its bench opinion, the Tax Court found Defendant presented "frivolous and

19   groundless claims" that were "stale and which ha[d] been rejected in innumerable cases

20   over several decades." *See* Gov. Ex. 17 (docket no. 95). In addition, the Tax Court found

21   that IRS determined that Defendant had unreported income from services he rendered as

22   an osteopathic physician in 1998, and therefore, Defendant was liable for the tax

23   deficiency and additions to tax. *See id.* In particular, the Tax Court found that Defendant

24   "ha[d] no credibility when denying receipt of income in this case" due to "his improbable

25   claim and continuous obfuscation" during the proceedings. *See id.* The Tax Court also

26   upheld the IRS's request for civil tax penalties and ordered an additional penalty for

27   Defendant's frivolous tax arguments. *Id.*

28   / /

### E.   Appeal to the Ninth Circuit

On May 17, 2008, Defendant appealed the tax judge's decision to the Ninth Circuit.  *See* Gov. Ex. 18 (docket no. 95); *see also* Gov. Ex. 5 (docket no. 80) (*Bailey v. Comm'r*, 330 Fed Appx. 677 (9th Cir. May 26, 2009) (unpublished)).  In his brief to the Ninth Circuit, Defendant argued misrepresentations in the notice of deficiency, errors in the application of § 6020(b), and "fraudulent concealment by a public official." *See* Gov. Ex. 18 at 3, 4(e), 4(i) (docket no. 95).

On May 26, 2009, the Ninth Circuit rejected Defendant's arguments and affirmed the Tax Court's decision.  *See* Gov. Ex. 5 (docket no. 80).  Defendant filed a petition for rehearing on July 8, 2009, and he argued, among other things, that the IRS "created a report (basis of the substitute for return or SFR) out of whole cloth assessing a tax liability for appellant in 1998" based on the "agent's act…of pure coercion."  *See* Gov. Ex. 19 at 3 (docket no. 95).  Defendant stated that "[a]part from that pure unconstitutional coercion, the political contest that followed could never had happened." *See id.* Moreover, Defendant argued that he had no taxable income in 1998 and that the "SFR accepted by the Tax Court was legally but not lawfully sufficient." *Id.* at 5.  However, the Ninth Circuit denied his petition for rehearing. *See* Gov. Ex. 20 (docket no. 95).

### F.   Defendant's Continued Tax Evasion and Criminal Proceeding

After receiving his due process and exhausting his remedies associated with his Tax Court proceedings, Defendant furthered his tax evasion scheme by relying upon his frivolous "trust" theories, which were outright rejected by the Tax Court, and Defendant evaded his taxes by filing false tax returns for tax years 2004 through 2001 declaring minimal income and no taxable income, as alleged in the indictment. *See* Gov. R&O at 3-9 (docket no. 46).

Despite receiving his due process in Tax Court, Defendant has disguised his collateral attack on tax year 1998, which was part of the prior Tax Court proceedings, as a motion to dismiss the indictment.   The United States submits the following response in opposition to this motion.

### III

### MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF THE UNITED STATES' RESPONSE IN OPPOSITION

#### A.   Defendant's Affirmative Acts, Not "Codes," Led To His Indictment

Defendant's affirmative acts of tax evasion led to his indictment, not the codes in his tax transcripts for tax year 1998.  Defendant's arguments to dismiss the indictment are premised on the notion that had the IRS not coded his transcript for a substitute for return, there would not have been a Tax Court case, and Defendant would not have been indicted for tax evasion.  *See* Def. Mot. at 4-8 (docket no. 93).  However, Defendant is wrong.  First, the entries in Defendant's tax transcripts do not show that he filed a tax return for 1998.  *See* Gov. Ex. 2, 3, 4 (docket no. 95).  Defendant cannot dispute this because he did not file a tax return for 1998 prior to the Tax Court proceedings in 2007.  Rather, the entries in the tax transcripts show that the IRS entered a code for a substitute for return (TC 150 SFR) because Defendant had not filed a tax return for 1998.  *See* Gov. Ex. 4 (docket no. 95).  Defendant knows that the IRS Revenue Agent assigned to his case "used a Substitute for Return, 26 USC 6020(b) to create a working computer file" on Defendant's master file for tax year 1998.  *See* Gov. Ex. 13 at 4 (docket no. 95).  The code was entered on February 23, 2005, and the IRS completed the § 6020(b) return in June 2006.  *See* Gov. Ex. 4, 6 (docket no. 95). Defendant received a copy of the § 6020(b) return in July 2006 and received the notice of deficiency in November 2006. *See* Gov. Ex. 6, 7 (docket no. 95); Def. Ex. A (docket no. 93).  The IRS followed the proper procedures for dealing with a taxpayer (*i.e.*, Defendant) who has taxable income but refuses to file his tax returns and pay federal income taxes.  Thus, Defendant has provided no evidence of any alteration, fabrication, or manipulation of any codes in the tax transcripts for tax year 1998.

Second, The Internal Revenue Code's deficiency procedures "do not require the Commissioner to prepare a return on a taxpayer's behalf before determining and issuing a notice of deficiency." *Roat v. Comm'r*, 847 F.2d 1379, 1381 (9th Cir. 1988).  Treasury

regulations are even more explicit that the Commissioner need not prepare such a return. *See* 26 C.F.R. § 301.6211-1(a) (2015) (indicting that the Commissioner need not prepare a return for the taxpayer before determining the taxpayer's deficiency).   Where the taxpayer files no return, the tax deficiency can be determined "as if a return was made showing the amount of tax to be zero." *Roat*, 847 F.2d at 1381 (citing *Hartman v. CIR*, 65 T.C. 542, 546 (1975)).   "A rule requiring the Commissioner to prepare a return first would create an administrative burden for no good reason." *Roat*, 847 F.2d at 1382. When a taxpayer fails to file any return, "it is as if he filed a return showing a zero amount for purposes of a deficiency." *Schiff v. United States*, 919 F.2d 830, 832 (2d Cir. 1990).   The deficiency is simply "the amount of tax due," *Laing v. United States*, 423 U.S. 161, 175 (1976), and it can be calculated, and the notice prepared, on that basis. *Geiselman v. United States*, 961 F.2d 1, 5 (1st Cir. 1992).   Neither a substitute for return (i.e., a dummy SFR) nor a return under § 6020(b) is a prerequisite to the IRS issuing a deficiency notice and determining the tax deficiency owed by the taxpayer.  *Roat*, 847 F.2d at 1382 ("A substitute for return ordinarily would add nothing: even if the Commissioner prepared a dummy return on behalf of the taxpayer, the Commissioner would not use the return in determining the deficiency."); *see also Smalldridge v. Comm'r*, 804 F.2d 125, 127 n.2 (10th Cir. 1986) ("even if a substitute for return was not prepared, the Commissioner was still within his authority to issue a notice of deficiency"); 26 U.S.C. § 6201.  The IRS is not required to prepare a substitute for return prior to issuing a valid deficiency notice to the taxpayer.  *Roat*, 847 F.2d at 1382 & n.1 (noting that section 6020(b) contains language that is "permissive, not mandatory").

The notice of deficiency commences the 90-day period for the taxpayer to petition the Tax Court, not the substitute for return. *See* 26 U.S.C. § 6213(a).  Therefore, it was the notice of deficiency [*see* Def. Ex. A (docket no. 93)] that led to Defendant's decision to petition the Tax Court for a redetermination of the tax deficiency, and not the "coded language" in the transcript surrounding the "TC 150" entry.  Defendant's petition to the Tax Court was forum to contest the tax deficiency for tax year 1998, not a motion to

dismiss an indictment that did not charge him with a crime with respect to tax year 1998. The substitute for return was only necessary for the Commissioner to assess additions to tax under § 6651(a)(2).  It was not a prerequisite to the issuance of a notice of tax deficiency, which led to the Tax Court proceedings. *See Roat*, 847 F.2d at 1381-82. While Defendant claims that he was led to believe that if he did not file tax returns, then the IRS would do so and claim a deficiency [*see* Def. Mot. at 6 (docket no. 93), Defendant's argument misses the mark because the IRS did not need to file a substitute for return in order to issue a statutory notice of deficiency. *See Whittington v. CIR*, T.C. Memo 2015-152, 2015 WL 4737086 (U.S. Tax Ct. 2015) (noting that the existence or absence of the substitute for return is irrelevant to the validity of the statutory notice of deficiency; it is only relevant to the additions to tax).   To the extent Defendant's arguments in his motion to dismiss depend on the claimed invalidity of the substitute for return, Defendant's arguments have no merit. *See id.*

More importantly, Defendant was informed by the Tax Court that his "trust" theories were frivolous (*see* Gov. Ex. 16 at 54, 56-61 (docket no. 95)), and nevertheless, he continued after the Tax Court proceedings in 2007 to assign his income to the "ALH trust," directed his employers to write checks for services he rendered to the "ALH" trust, deposited the checks into the ALH bank account, and transferred and used those funds to pay for his personal expenses.  *See* Indictment (docket no. 1); Gov. R&O 3-9 (docket no. 46).  Beginning in September 2008, Defendant filed false tax returns for tax years 2004 through 2011, failed to declare his taxable income, and failed to pay his federal income taxes. *See id.*  These were the acts of Defendant that led to his indictment for tax years 2004 through 2011, and not the coded entries in his tax transcripts made by the IRS in 2005.  As such, the Court should deny Defendant's motion to dismiss the indictment.

/ /

/ /

/ /

/ /

### B.     There Was No Outrageous Government Conduct

There was no government misconduct, let alone "outrageous" government conduct in this criminal case or in the prior civil tax proceedings. Outrageous government conduct occurs when the actions of law enforcement officers or informants are "so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *United States v. Russell*, 411 U.S. 423, 431-32 (1973). Dismissing an indictment is an extraordinary remedy and "a defendant must meet an extremely high standard" to secure it. *United States v. Nobari*, 574 F.3d 1065, 1081 (9th Cir. 2009); *see also United States v. Rogers*, 751 F.2d 1073, 1076 (9th Cir. 1985) ("Because it is a drastic step, dismissing an indictment is a disfavored remedy."). "Dismissing an indictment for outrageous government conduct, however, is 'limited to extreme cases' in which the defendant can demonstrate that the government's conduct 'violates fundamental fairness' and is 'so grossly shocking and so outrageous as to violate the universal sense of justice.'" *United States v. Black*, 733 F.3d 294, 302 (9th Cir. 2013) (citations omitted). The Ninth Circuit has recognized that this is an "extremely high standard." *Id.* (citations omitted). "Indeed, there are only two reported decisions in which federal appellate courts have reversed convictions under this doctrine." *Id.* (citing *United States v. Twigg*, 588 F.2d 373 (3d Cir. 1978); *Greene v. United States*, 454 F.2d 783 (9th Cir. 1973)). "To warrant dismissal on due process grounds, government conduct must be so grossly shocking and outrageous as to violate the universal sense of justice." *United States v. Kearns*, 5 F.3d 1251, 1253 (9th Cir. 1993). There is no bright line test for determining the line between acceptable and outrageous, and therefore, each case must be resolved on its own facts. *Black*, 733 F.3d at 302 (citation omitted).

Here, Defendant's motion to dismiss has all the hallmarks of traditional, meritless tax-defier arguments that are similar to arguments he has previously raised. *See, e.g.*, Gov. Ex. 5, 7, 10-13, 16, 18, 19 (docket no. 95). Federal courts have been hostile to such arguments and admonish against emboldening tax protestors by over-engaging them.

The Fifth Circuit expressed the judiciary's palpable distaste for these arguments in the following, often-quoted excerpt:

> We perceive no need to refute these arguments with somber reasoning and copious citation to precedent; to do so might suggest that these arguments have some colorable merit. The constitutionality of our income tax system – including the role played within the system by the Internal Revenue Service and the Tax Court – has long been established. We affirm the dismissal of Crain's spurious "petition" and the assessment of a penalty imposed by the Tax Court for instituting a frivolous proceeding.
>   . . . .
>
> We are sensitive to the need for the courts to remain open to all who seek in good faith to invoke the protection of law. An appeal that lacks merit is not always – or often – frivolous. However, we are not obliged to suffer in silence the filing of baseless insupportable appeals presenting no colorable claims of error and designed only to delay, obstruct, or incapacitate the operations of the courts or any other governmental authority. Crain's present appeal is of that sort. It is a hodgepodge of unsupported assertions, irrelevant platitudes, and legalistic gibberish. The government should not have been put to the trouble of responding to such spurious arguments, nor this court to the trouble of 'adjudicating' this meritless appeal.

*Crain v. Comm'r*, 737 F.2d 1417, 1417-18 (5th Cir. 1984).

In addressing the merits of Defendant's motion to dismiss, the motion and Appendix I are littered with Defendant's platitudes, conclusory arguments, and devoid of any factual assertions supported by declaration or affidavit sworn under penalty of perjury. The United States need not respond to each paragraph in Appendix I in order to identify the fatal flaws in Defendant's arguments and to expose Defendant's "hodgepodge of unsupported assertions, irrelevant platitudes, and legalistic gibberish."

It is undisputed that Defendant did not file a tax return for tax year 1998. Therefore, the IRS was tasked with preparing a tax return on behalf of Defendant based upon its administrative investigation. *See* Gov. Ex. 6 (docket no. 95). The IRS opened a civil examination and entered a code for a substitute for return on Defendant's tax transcripts. *See* Gov. Ex. 4 (docket no. 95) (noting the TC 150 code with SFR)). An IRS Revenue Agent was assigned to determine the tax deficiency and a notice was mailed to Defendant. *See* Gov. Ex. 6, 7 (docket no 95); Def. Ex. A (docket no. 93). Defendant decided to exercise his right to due process and have the deficiency litigated in Tax

Court. *See* Gov. Ex. 8, 16 (docket no 95).  During the Tax Court proceedings, Defendant attacked the IRS computer records and contended that "[a]ll underlying computer records were demonstrably flawed, all submitted evidence either never had any substantial foundation, were not authenticated, or are in substantial doubt." *See* Gov. Ex. 15 at 3 (docket no. 95).  Defendant also attacked the coding for the SFR and claimed there was no valid assessment. *Id.* at 5. The Tax Court ruled against Defendant and rejected his frivolous arguments that he did not owe any tax for tax year 1998.  *See* Gov. Ex. 16, 17 (docket no. 95).  With his motion to dismiss, Defendant has provided no factual support for his claim that the IRS engaged in any manipulation or fabrication of evidence.  In fact, the evidence provided in support of this response in opposition demonstrates no such misconduct occurred.

IRS Revenue Agent John Parish previously stated in his sworn declaration that when a taxpayer fails to file an income tax return, the IRS is authorized under the Internal Revenue Code (26 U.S.C. § 6020(b)(1)) to prepare a substitute for return. *See* Gov. Ex. 4 (docket no. 46).  Section 6020(b)(1) provides:

> If any person fails to make any return required by any internal revenue law or regulation made thereunder at the time prescribed thereof, or makes, willfully or otherwise, a false or fraudulent return, the Secretary shall make such return from his own knowledge and from such information as he can through testimony or otherwise.

*See id.*  Agent Parish noted that Source Code 24 reflects that the IRS was conducting an audit of a taxpayer who has not filed a return. *See id.*  In addition, Agent Parrish noted that Push Code 036 is the code that is used by the IRS to establish that an SFR on the IRS computer system. *See id.*

Agent Parish examined Defense Exhibit B (MFTRA – IMF MCC Transcript – Specific) (docket no. 77), which reflects entries for Defendant's individual income tax for year 2004.  *See* Gov. Ex. 4 (docket no. 46).  This transcript reflected that an "SFR" was established for the year 2004, and a module was created. *Id.*  Similarly, the tax transcript

for tax year 1998 contains the same codes and reference to an "SFR." *See* Gov. Ex. 4 (docket no. 95).

Agent Parish examined Defense Exhibit C (TXMODA) (docket no. 77), which reflects entries for Defendant's individual income tax for the year 2004. *See* Gov. Ex. 4 (docket no. 46). This transcript reflects that an "SFR" was established for the year 2004, and a module was created. *Id.* Similarly, the tax transcript for tax year 1998 contains the same codes and reference to an "SFR." *See* Gov. Ex. 3 (docket no. 95).

Finally, Agent Parish reviewed the entirety of Defendant's motion and the exhibits attached to the motion (docket no. 77), and noted that "there is nothing indicating a Form 1040A (or any other tax return) was filed by or on behalf of Defendant for any tax year, including tax year 1998. *See* Gov. Ex. 4 (docket no. 46). Additionally, the United States proffers that Agent Parrish would contend that there is nothing in Defendant's motion to dismiss the indictment, Appendix I, or the attachments that indicate that any SFRs were improperly established for any year, including tax year 1998.

There is no dispute that Defendant was a non-filer – meaning, he did not file federal tax returns until after the audit and tax proceedings covering his 1998 tax year. *See* Gov. Ex. 5 (docket no. 46) (Ninth Circuit Opinion and Government Brief from Westlaw). Source Code 24 and Push Code 036 were validly entered in the IRS computer system given Defendant's status as a non-filer. *See* Gov. Ex. 4 (docket no. 46). Therefore, Defendant's alleged claims of "false" or "fictitious" computer entries and code entries by the IRS are meritless. Moreover, as noted in the United States' earlier response, the IRS is not on trial in this case and its state of mind is completely irrelevant to any defense that Defendant may seek to raise. *See* Gov. R&O at 16 (docket no. 46).

Defendant asserts in his motion to dismiss that the coded language in his tax transcript shows some sort of manipulation. But it is Defendant's misunderstanding of the codes which defeat his arguments. Here are some fatal flaws:

- Defendant painstakingly dissects the "DLN" code for the TC 150 entry on March 14, 2005. *See* Def. Mot. Appendix I at 4-5. However, according to

Revenue Agent Parrish, Defendant's dissection is a fatal flaw because the "DLN" cannot be dissected and read in isolation, but rather must be read in its entirety. When analyzed in its entirety, the "DLN" for TC 150 is coded for a substitute for return, not for a Form 1040A. *See* IRM § 4.4.9.6.2.2(6) (noting that for an SFR, the "DLN" will be "xx210-888-00000-xxxx;" whereas in this case, *see* Gov. Ex. 4 (docket no. 95), the "DLN" for TC 150 is 29210-888-00000-5, which is coded for an SFR). Thus, there was no manipulation or fabrication in the original entry as Defendant claims. The reference to "SFR" on the line next to TC 150 correctly matches up with the "DLN." *See* Gov. Ex. 4 (docket no. 95).

- Defendant argues repeatedly that IRS's Examination Division made "adjustments" and "assessments." *See* Def. Mot. Appendix I at 1-14. However, a clear reading of the tax transcripts (*see* Gov. Ex. 2, 3, and 4 (docket no. 95)), and Defendant's own understanding of his prior Tax Court case, proves that IRS's Appeals Division made the adjustments after the Tax Court issued its decision sustaining the tax deficiency. *See id.*

- Since Defendant did not file a return, the "Original Return" for his tax year 1998 is the substitute for return (SFR). Thus, his attempt to distinguish an "Original Return" and an "SFR" is meritless and nonsensical.

- Defendant refers to "Push Code 036" as an "override." The term "override" is a term invented by Defendant, and not a term used by the IRS. There is no evidence or support for such term in the Internal Revenue Code, Internal Revenue Manual, or any other authoritative tax law. When an individual does not file an income tax return, the IRS has the authority under 26 U.S.C. § 6020 to prepare tax returns for individuals who have not complied with the Internal Revenue Laws. This is not an "override." Thus, Defendant's use of his own invented term – "override" – is of his own making and it lacks merit.

Defendant asserts that the IRS failed to follow proper procedures because the SFR did not satisfy the requirements under IRC § 6020(b).  However, Defendant received the return created under IRC § 6020(b), and it complied with the requirements. *See* Gov. Ex. 6 (docket no. 95); *Wheeler v. Comm'r*, 446 Fed. Appx. 951 (10th Cir. Nov. 1, 2011) (noting the three documents required for the return to comply with § 6020(b)). Defendant's arguments are also based upon the false premise that an SFR is necessary for the Commissioner to assert a deficiency.  Section 6020 gives authority to the IRS to make a return on behalf of a taxpayer who has failed to file a required return.  *See United States v. Verkuilen*, 690 F.2d 648 (7th Cir. 1982) (noting that Section 6020(b) "does not make it mandatory that the Secretary of the Treasury file a tax return before issuing a statutory notice of deficiency."); *Roat v. Comm'r*, 847 F.2d 1379, 1381-82 (9th Cir. 1998). Section 6020(b) provides the Secretary with some recourse should the taxpayer fail to fulfill his statutory obligation to file a tax return, but it does not impose an affirmative obligation on the government.  *See Moore v. Comm'r*, 722 F.2d 193, 196 (5th Cir. 1984). Defendant's procedural challenge is meritless.   However, section 6020(b) does not require the IRS to prepare tax returns for individuals who fail to file, nor does it excuse the tax payer from criminal liability for that failure.  *See United States v. Powell*, 955 F.2d 1206, 1213 (9th Cir. 1992); *see also United States v. Schiff*, 919 F.2d 830, 832-33 (2d Cir. 1990) ("There is no requirement that the IRS complete a substitute return"); *United States v. Stafford*, 983 F.2d 25, 27 (5th Cir. 1993) ("[A]lthough [§ 6020(b)] authorizes the Secretary to file for a taxpayer, the statute does not require such a filing").

In sum, Defendant's motion and appendix construct a "conspiracy theory" that, for example, claims: (1) the IRS engaged in a false-return scheme; (2) the Tax Court lacked jurisdiction; (3) the government committed fraud on the Tax Court; (4) the IRS hid tax returns; and (5) the IRS manipulated and instituted override procedures to fabricate codes in the tax transcripts.   As discussed above, these are nothing more than frivolous allegations cloaked in "tax protestor rhetoric and legalistic gibberish."  *See Crain v. Comm'r*, 737 F.2d 1417, 1418 (5th Cir. 1984); *Parker v. Comm'r*, 117 F.3d 785, 787 (5th

1    Cir. 1997) (noting that some latitude should be given, but that does not mean the
2    defendant has a "license to litter the dockets of the federal courts with ridiculous
3    allegations that the Internal Revenue Code is the product of an illegal conspiracy."). For
4    these reasons, the Court should deny the motion to dismiss.

5    **C.    Defendant Is Attacking the Legitimacy of His Prior Tax Court Case**

6          In decoding Defendant's motion to dismiss, Defendant is simply attacking the
7    legitimacy of his prior Tax Court proceedings alleging that some code in his tax
8    transcripts was "fabricated" as part of an IRS-led "false-return scheme." *Passim* Def.
9    Mot. at 1-15. Defendant is simply raising issues already litigated or that should have
10   been litigated in his prior Tax Court proceeding addressing tax year 1998. [*Passim* Def.
11   Mot.] First, Defendant raised issues with the tax transcripts and codes in his prior Tax
12   Court proceedings. *See, e.g.,* Gov. Ex. 11-13, 15, 18, 19 (docket no. 95). The Tax Court
13   rejected his arguments and upheld the tax assessment. *See* Gov. Ex. 16 (docket no. 95).
14   The Ninth Circuit affirmed. *See* Gov. Ex. 5 (docket no. 80). In his motion to dismiss,
15   Defendant seeks to relitigate the issues surrounding his prior Tax Court proceedings
16   involving tax year 1998, which have already been decided and affirmed by the Ninth
17   Circuit. Second, Defendant is not charged in the indictment with tax evasion for tax year
18   1998. Therefore, it is unclear how any error in the prior Tax Court proceedings, which
19   have no relevance to the elements of the tax evasion charges in the indictment that are
20   related to tax years 2004 through 2011, can somehow result in the dismissal of the
21   indictment in this case. The Court need not tarry long on this legal conundrum. None of
22   Defendant's arguments about an IRS false-return scheme, lack of jurisdiction, fraud on
23   the Tax Court, outrageous government conduct, hiding tax returns, manipulating and
24   overriding tax procedures, and fabricating codes in the tax transcripts merit serious
25   consideration. Defendant had his due process his prior Tax Court proceedings. This
26   Court does not need to re-visit arguments attacking the Tax Court's decision for a tax
27   year (1998) that is not even charged in the indictment. The Court should deny
28   Defendant's motion to dismiss.

**D.**     <u>The Motion to Dismiss Contains an Improper Motion to Reconsider</u>

Defendant tries to turn his motion to dismiss into a motion to reconsider his request for IRS source code and system documentation. *See* Def. Mot. Appendix I at 12 (docket no. 93). Defendant's attempt fails because he did not present any newly discovered evidence, the Court did not commit clear error in its initial denial of the motion for source code and system documentation, and there has been no intervening change in controlling law. In assessing motions for reconsideration in criminal cases, some courts have relied on the standard that governs motions for reconsideration under Rule 59 of the Federal Rules of Civil Procedure. *See United States v. Sims*, 252 F. Supp.2d 1255, 1261 (D.N.M. 2003); *see also Sch. Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Although, a motion for reconsideration "is not a second chance for the losing party to make its strongest case or to dress up arguments that previously failed." *Sims*, 252 F. Supp.2d at 1261 (quoting *Voelkel v. Gen. Motors Corp.*, 846 F. Supp. 1482, 1483 (D. Kan. 1994)). "Reconsideration [under Rule 59] is appropriate if the district court (1) is presented with newly discovered evidence; (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *ACandS, Inc.*, 5 F.3d at 1263. Because Defendant has failed to present any newly discovered evidence, the Court did not commit any error in its initial decision, and there has been no change in controlling law, the Court should deny Defendant's "motion for reconsideration" of his request for source code and system documentation as it relates to the IRS computer systems.

**E.**     <u>Defendant Failed to Meet His Burden for an Evidentiary Hearing</u>

While Defendant requests an evidentiary hearing, his motion does not allege facts with "sufficient definiteness, clarity, and specificity" to enable the Court to conclude what contested issues of fact exist. Defendant failed to submit any sworn affidavits in accordance with the Local Rule 47.1 and Rule 47 of the Federal Rules of Criminal Procedure. Defendant cannot submit his declaration with his reply brief as that would be a clear violation of these rules, which require the sworn affidavits to be submitted with

the motion to dismiss.  As such, the Court should use its discretion to deny Defendant's request for an evidentiary hearing.

An evidentiary hearing on a motion to dismiss "need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist."  *See United States v. Howell*, 231 F.3d 616, 620 (9th Cir. 2000) (citations omitted).  A hearing will not be held on a defendant's motion to dismiss merely because a defendant wants one.  *See id.* at 621. An evidentiary hearing on a motion to dismiss the indictment based on government misconduct is required if a defendant raises a material issue of fact "which if resolved in accordance with [the defendant's] contentions would entitle him to relief."  *United States v. Irwin*, 612 F.2d 1182, 1187 (9th Cir. 1980) (internal quotations and citations omitted).

To warrant an evidentiary hearing, the defendant must demonstrate that a "significant disputed factual issue" exists such that a hearing is required. *Id.*  For a defendant to be entitled to a pre-trial evidentiary hearing based on an outrageous government conduct claim, the defendant's moving papers must at a minimum present a colorable claim for relief which alleges specific facts supporting a claim of government misconduct.  *See United States v. Olachea-Jimenes,* 86 F.3d 1164 (9th Cir. 1996); *United States v. Voigt,* 89 F.3d 1050, 1067 (3d Cir. 1996).  Defendants are not entitled to an evidentiary hearing because, even taking all of defendant's allegations as true, their motion fails to state a colorable outrageous government conduct claim. *See Olachea-Jimenes*, 86 F.3d at 1164; *see also United States v. Lazarevich*, 147 F.3d 1061, 1065 (9th Cir. 1998).  Local Criminal Rule 47.1(g)(1) provides, in relevant part:

> Criminal motions requiring predicate factual finding shall be supported by declaration(s) . . . .  The Court need not grant an evidentiary hearing where either party fails to properly support its motion or opposition.

A district court may properly deny a request for an evidentiary hearing on a pre-trial motion where the defendant does not submit a declaration pursuant to a local rule. *See United States v. Wardlow*, 951 F.2d 1115, 1116 (9th Cir. 1991); *United States v.*

*Batiste*, 868 F.2d 1089, 1093 (9th Cir. 1989) ("[T]he defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer.  In these circumstances, the district court was not required to hold an evidentiary hearing."); *United States v. Zone*, 403 F.3d 1101, 1106 (9th Cir. 2005) (affirming denial of motion to dismiss indictment without an evidentiary hearing because defendant "ha[d] not presented any evidence [to support his allegation] of undue coercion or collusion by federal authorities"); *United States v. Moran-Garcia*, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (holding that boilerplate motion containing indefinite and unsworn allegations held insufficient to require evidentiary hearing on defendant's motion to suppress statements).

No rights are infringed by the requirement of such a declaration because the declaration cannot be used by the United States at trial over a defendant's objection. *Batiste*, 868 F.2d at 1092 (proper to require declaration in support of Fourth Amendment motion to suppress); *Moran-Garcia*, 783 F. Supp. at 1271-74 (extending *Batiste* to Fifth Amendment motion to suppress).

Here, Defendant's election not to submit a sworn affidavit is a plain violation of Local Rule 47.1(g) and Rule 47 of the Federal Rules of Criminal Procedure.  While Defendant submitted Appendix I, it contains a mix of unsupported allegations, boilerplate arguments, incorrect assumptions, and conspiracy theories concerning due process and alleged fabrication of evidence.  Defendant's motion and Appendix I can hardly be sufficient to meet these rule requirements.  More importantly, even if the Court considered Appendix I as some sort of "affidavit," Appendix I identifies no witness or affiant who would testify under oath to the content therein, and Appendix I is not signed by anyone under penalty of perjury.[9]  In his motion and Appendix I, Defendant has identified no facts which, if proved, would allow the Court to grant his motion to dismiss. The Court should deny Defendant's request for an evidentiary hearing.

---

[9]      In his motion, Defendant states "Appendix I is also necessary to benefit the testimony of the parties' experts at a hearing on Dr. Bailey's motion." Def. Mot. at 9 (docket no. 93).  However, Defendant has failed to identify his "expert," has not provided any notice or reports of his "expert," and failed to submit any declarations or affidavits of his "expert."  The United States cannot determine whether it needs an "expert" until Defendant has complied with his disclosure and notice obligations.

# IV

## <u>CONCLUSION</u>

For the foregoing reasons, the United States respectfully requests that the Court deny Defendant's Motion to Dismiss the Indictment without an evidentiary hearing.

DATED:  August 28, 2015                    Respectfully submitted,

                                           LAURA E. DUFFY
                                           United States Attorney

                                           /s/ *Joseph J.M. Orabona*
                                           JOSEPH J.M. ORABONA
                                           Assistant United States Attorney